# EXHIBIT A

STATE OF MICHIGAN **REC'D**
IN THE 50th CIRCUIT COURT
FOR THE COUNTY OF CHIPPEWA

TIME

AUG 0 5 2011

LORI PEFFERS and
JOEL PEFFERS, individuals,
and on behalf of those
MICHIGAN CONSUMERS
SIMILARLY SITUATED,

**CHIPPEWA COUNTY CLERK**

Plaintiffs,

Case No: 11-1774-CP

v.

Hon: NICHOLAS J. LAMBROS

TREX COMPANY, INC.

Defendant.

---

JOHN H. UNDERHILL (P42326)
JOHN H. UNDERHILL, P.C.
Attorney for Plaintiffs
718 Ashmun Street
Sault Ste. Marie, MI 49783
906-632-6020

---

**THERE IS NO OTHER PENDING OR RESOLVED CIVIL ACTION ARISING OUT OF THE TRANSACTION OR OCCURRENCE ALLEGED IN THE COMPLAINT.**

## COMPLAINT

NOW COMES Plaintiffs', Lori Peffers and Joel Peffers, by and through their counsel, JOHN H. UNDERHILL, P.C., by John H. Underhill, and for their Complaint against the Defendant, says as follows:

(1) The Plaintiffs are residents of the County of Chippewa, Michigan.

(2) The Defendant is a foreign corporation who conducts business throughout

Pg 1 of 10

the United States, including Chippewa County, Michigan.

(3) This court has jurisdiction over the instant dispute pursuant to its power to grant equitable relief and the amount in controversy exceeds $25,000.00.

(4) In 2007, the Plaintiffs' constructed an outdoor "deck" at their residence, in part, made of "decking" material manufactured, sold and/or placed into the stream of commerce by the Defendant for the purpose of sale to, and consumption by, consumers for residential, household and/or personal purposes.

(5) As an inducement to purchase its product and to pay substantially more money for it than similar products, the Defendant marketed, advertised, and/or sold the "decking" material(s) to consumers, including the Plaintiffs', while representing that its "decking" was a "lifetime" product in the sense that, unlike standard building materials used for the same purpose, its "decking" materials would last for an extended duration of time maintenance-free without a significant change and/or degredation in appearance over time, would not rot and/or otherwise degenerate, would "stay beautiful for years to come" and would not need to be sanded, stained, or painted.

(6) In fact, the substantially higher cost of the Defendant's "decking", compared to similar products sold in the marketplace for much less money, was an inducement in and of itself to purchase the product because it is commonly thought by consumers that "you get what you pay for" and the price itself supported the notion that the Defendant's decking was a 'worry free' product.

(7) Consistent with its representation(s) described above, and as a further inducement to purchase its "decking" and pay substantially more money for it than similar products sold in the marketplace, the Defendant offered a "25 year residential

warranty" on its "decking" sold to consumers, including the Plaintiffs.

(8) The "decking" marketed and sold to the Plaintiffs is believed to have been manufactured by the Defendant in 2006 under the product line "Trex Accents Decking".

(9) Soon after the Defendant's "decking" was professionally installed as the integral part of the Plaintiffs' new "outdoor deck", the "decking" began to show extraordinary discoloration and black and/or dark color "blotches" began to appear; a condition that turned out to be just the beginning of a "nightmare" for the Plaintiffs' that continues to this day.

(10) A dream having turned into a nightmare considering the cost and purpose of the "outdoor deck" and how the Defendant's product was marketed, the Plaintiffs', of course, contacted the Defendant's representatives seeking an explanation, understanding and/or solution.

(11) The Defendant subsequently sent its representatives to the Plaintiffs' home, conducted an inspection and claimed that the discoloration and black and/or dark colored "blotches" that appeared on the surface of its "decking" was "mold", therefore not its responsibility to address. The Defendant refused to honor its "25-year" warranty.

(12) Despite its denial of responsibility, the Defendant then arranged to apply one or more "bleaching" products to the surface of its "decking" at the Plaintiffs' home; an action(s) that made the problem(s) worse and further discolored the Plaintiffs' new "outdoor deck" making it look like it had a "disease"..

(13) During the same time period, many other homeowners and/or customers who purchased the same "decking" material from the Defendant experienced the same problem(s) as the Plaintiffs, to wit: significant discoloration and the appearance of black

and/or dark colored "blotches".

(14) In fact, the Defendant received many of the same complaints from consumers who purchased the same "decking" as the Plaintiffs' and the Defendant responded/represented that the discoloration and/or "blotches" was/were "mold" and/or caused by the growth of "mold".

(15) Despite the Defendant's representations that the problem(s) described above was "mold" and/or caused by "mold" and not its responsibility, the source of the discoloration and/or appearance of black and/or dark colored "blotches" actually was caused by a manufacturing defect that trapped moisture in pockets beneath the surface of the "decking" and the Defendant knew it while its representatives were saying otherwise.

(16) It has been discovered that many consumers and/or purchasers of the same "decking" manufactured and/or sold by the Defendant experienced the same problems, including at least 10 consumers located in the same geographical area as the Plaintiffs' home making it, at first glance, appear credible that the problems could be caused by something unique to the area.

(17) This complaint is brought pursuant to MCR 2.605 and MCL 445.911 and seeks a declaratory judgment, equitable relief and money damages.

## Count I - Violation(s) of the Michigan Consumer Protection Act ( MCL 445.901 et Sec)

(18) The allegations contained above in paragraphs (1) thru (17) are

incorporated by reference as if set forth herein verbatim.

(19) The Defendant violated the Michigan Consumer Protection Act for committing one or more of the following unfair, unconscionable, and/or deceptive methods, acts and/or practices, by:

- (A) Representing that its "decking" sold to the Plaintiffs' and other consumers would have an extended life with little or no maintenance and without a significant change in its appearance over time, compared to other similar products sold in the marketplace for less money when, in fact, the Defendant's "decking" did not have those characteristics, uses, and/or benefits, in violation of MCL 445.903 (1)(c);

- (B) Representing that its "decking" was of a particular standard, quality and/or grade, as more specifically described above, when it was not, in violation of MCL 445.903(e);

- (C) Failing to reveal a material fact, the omission of which misled and/or deceived the Plaintiffs and/or other purchasers of its "decking", a fact which could not reasonably be known by the Plaintiffs' and other consumers before making a decision to purchase the Defendant's "decking" and/or after the "decking" was sold to them, to wit: That the Defendant's "decking" could become significantly discolored and/or unsightly black and/or dark colored "blotches" could appear on the surface of the "decking" once exposed to the elements AND/OR that there was a manufacturing defect that would, or could, lead to significant discoloration and/or "mold" to appear and flourish, in violation of MCL 445.903(s);

- (D) Representing and/or promising that its "decking" had certain benefits, which it did not have, to wit: That its decking would have an extended life with little or no maintenance and without a significant change in its appearance over time, compared to other similar products sold in the marketplace for less money, in violation of MCL 445.903 (y);

- (E) Failing to reveal facts material to the transaction in light of representations of fact made in a positive manner, to wit: That its "decking" would have an extended life with little or no maintenance and without a significant change in its appearance over time, compared to other similar products sold in the marketplace for less money when, in fact, the Defendant knew of a defect created

during the manufacturing process of its "decking" that, once it was exposed to the elements, could lead to unsightly discoloration, a change in its color and/or appearance and/or the appearance/growth of "mold", in violation of MCL 445.903(cc).

(20) Any reasonable person(s) would have purchased the Defendant's "decking" in reliance upon the Defendant's marketing, representations and/or inducements.

(21) As a result of the Defendant's violation(s) of the Michigan Consumer Protection Act, as described above, the Plaintiffs' have suffered various injuries and damages including, but not limited to, all costs associated with removing and replacing the "decking" manufactured and/or sold by the Defendant, the aggravation, mental distress and utter frustration dealing with the Defendant's representatives and the Defendant's failure to disclose the existence of the manufacturing defect described above and its refusal to remove and replace its defective "decking", attorney fees and costs as well as the lost use and enjoyment of their deck.

WHEREFORE, the Plaintiffs' seek the following relief on their own behalf:

- (A) A declaratory judgment finding the Defendant violated the Michigan Consumer Protection Act by engaging in one or more unfair, unconscionable and/or deceptive methods, acts and/or practices as defined by MCL 445.903, (e), (s), (y) and/or (cc), as described above;

- (B) A Order(s) requiring the Defendant to:

    (i) At its own expense, remove its "decking" materials from the Plaintiffs' property;

    (ii) Provide restitution to the Plaintiffs' in an amount to reflect the original purchase price paid for the Defendants' "decking", the cost of labor to install it and the cost to replace all supporting and/or appurtenant structures that cannot be used or re-used to support new "decking" materials, so as to make the Plaintiffs' "whole", as equity and good conscience requires; and

    (iii) Refrain from committing further unfair, unconscionable and/or deceptive methods, acts and/or practices, as defined by MCL 445.903©, (e), (s), (y) and/or (cc) as described above, in the sale of its "decking" products marketed as "lifetime" and/or "maintenance free".

 (C) Additionally, and/or in the alternative, a money judgment in an amount found appropriate by the trier of fact to reflect all damages incurred, as may be allowed by law together with all costs, interest and attorney fees so wrongfully incurred.

## Count II -Class Action on Behalf of all Michigan Consumers Similarly Situated

(22) The allegations contained above in paragraphs (1) thru (21) are incorporated by reference as if set forth herein verbatim.

(23) There are may other Michigan consumers and/or purchasers of the Defendants "decking" similarly situated, in addition to the Plaintiffs, who experienced the same problems and damages, the number of whom is so numerous that joinder of all is impracticable.

(24) The putative "class" is best described as, "Those Michigan consumers who purchased TREX decking marketed and/or sold under the product line "Trex Accents Decking" at any time from 2006 to 2008".

(25) There are questions of law and/or fact common to the class, to wit: The injuries and damages suffered by all arise out of the Defendant's marketing, advertisement(s) and/or representations made to members of the general public, the same violation(s) of the Michigan Consumer Protection Act and the same damages caused by the unsightly discoloration and appearance of black and/or dark colored "blotches" on the surface of the "decking".

(26) The Plaintiffs', as class representative(s), will fairly and adequately protect the interest of those similarly situated. In fact, since discovering the problems associated with the Defendants "decking", the Plaintiffs' have already engaged in a considerable effort and time to discover the real source of the problem at their expense, have had significant contact(s) with the Defendant's representatives and have tried the Defendant's proposed corrective "bleaching", which made the problems worse.

(27) Similarly, the Plaintiffs' claim(s) are not just "typical" of the claims of those similarly situated, but are almost identical to the problems experienced and the source of the problem, a manufacturing defect.

(28) The questions of law and/or fact common to those similarly situated, as described above, predominate over any questions affecting individual members of the class, particularly in light of the prospective remedy, to wit: The removal, repair and replacement of the defective "decking" with "decking" of sufficient grade and/or characteristics, as originally represented by the Defendant would be provided if its product was purchased.

WHEREFORE, the Plaintiffs' seek the following relief on behalf of all Michigan consumers similarly situated:

    (A)    A declaratory judgment finding the Defendant violated the Michigan Consumer Protection Act by engaging in one or more unfair, unconscionable and/or deceptive methods, acts and/or practices as defined by MCL 445.903©, (e), (s), (y) and/or (cc) as set forth above;

    (B)    An order(s) requiring the Defendant to:

        (i) At its own expense, remove its "decking" materials from each Consumers'' property;

      (ii) Create a common fund, in an appropriate amount, with an appropriate application process, to provide restitution to those consumers who can show (1) they purchased the s same "decking" at issue during the same time period when there was a defect(s) created in the Defendant's manufacturing process as described above, and (2) suffered the same problems, to wit: Significant discoloration and/or the appearance of black and/or dark colored "blotches"; and

      (iii) Create a common fund, in an appropriate amount, with an appropriate application process, to provide restitution to t those consumers who can show (1) they purchased the same "decking" at issue during the same time period when there was a defect(s) created in the Defendant's manufacturing process as described above, (2) they complained directly to the Defendant about the same problem(s) the Plaintiffs' experienced involving the same "decking" and also were not informed about the manufacturing defect(s) described above, and (3) suffered related economic, special and/or unique damages as a result of the problem(s) and/or the Defendant's deception(s) as to the source of the problems;

      (iv) Pay for notice to the putative class that is reasonably designed to reach all Michigan consumers who purchased the same "decking";

      (v) Create a common fund in an appropriate amount to reimburse and/or pay all costs incurred to obtain the requested relief and/or carry out the terms of the court's order(s) and/or judgment(s); and

      (vi) Refrain from committing further unfair, unconscionable and/or deceptive methods, acts and/or practices, as defined by MCL 445.903©, (e), (s), (y) and/or (cc) as set forth above, in the sale of its "decking" products.

(C) Additionally, and/or in the alternative, a money judgment in an amount found appropriate by the trier of fact to reflect all class damages as reflected above as may be allowed by law.

Dated: August 5, 2011                                RESPECTFULLY SUBMITTED
                                                     JOHN H. UNDERHILL, P.C.

                                                     _____
                                                     John H. Underhill (P42326)
                                                     Attorney for Plaintiff's

STATE OF MICHIGAN
IN THE 50th CIRCUIT COURT **REC'D**_____
FOR THE COUNTY OF CHIPPEWA             TIME

AUG 0 5 2011

LORI PEFFERS and
JOEL PEFFERS, individuals,
and on behalf of those                  **CHIPPEWA COUNTY CLERK**
MICHIGAN CONSUMERS
SIMILARLY SITUATED,

       Plaintiffs,

-vs-                                    File No: 11-11774-CP

                                        Hon. Nicholas J. Lambros

TREX Company, Inc.

       Defendants.

_____

JOHN H. UNDERHILL, P.C.
John H. Underhill   (P42326)
Attorney for Plaintiffs
718 Ashmun Street
Sault Ste. Marie, MI 49783
(906) 632-6020

_____

## JURY DEMAND

NOW COMES Plaintiff's, Lori Peffers and Joel Peffers, individuals, and on behalf of those Michigan Consumers similarly situated, by and through their counsel, John H. Underhill, P.C., by John H. Underhill, and hereby demands trial by jury to resolve all issues of contested fact, as may be allowed by law.

Dated: August 5, 2011                   RESPECTFULLY SUBMITTED,

                                               JOHN H. UNDERHILL, P.C.

                                               John H. Underhill (P42326)
                                               Attorney for Plaintiff